# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | In Proceedings<br>Under Chapter 11 |
| PARADISE HOMES, INC. | |
| | Case No. 07-60389 |
| Debtor(s). | |

## OPINION

In this case the Court must determine what interest, if any, a debtor retained in real property when, prior to commencement of its Chapter 11 case, it executed a deed to that property in anticipation of a sale that did not close.

The debtor in this case, Paradise Homes, Inc., is in the business of selling and installing mobile and modular homes in East Central Illinois. Prior to the filing of the Chapter 11 bankruptcy petition, the debtor was the owner of real property located at 2450 Eastgate, Charleston, Illinois ("Eastgate property"). This property was subject to several mechanic's liens, including the lien of the movant, Coach House, Inc.[1] According to the testimony of Charles Faw, president of the debtor corporation, the debtor actively tried to sell the Eastgate property for some time. Eventually, it entered into an agreement to sell the property to Mr. Faw's father, Prentiss Faw. While there is some question regarding the agreed sales price, it is undisputed that on July 25, 2007, prior to the closing of the real estate sale, the debtor conveyed the property by corporation warranty deed to

---

[1] In fact, on July 17, 2007, Coach House obtained an Order of Foreclosure and Sale from the Circuit Court of Coles County, Illinois in regard to the property, which required Paradise Homes to pay Coach House $11,183.00 plus interest and attorney's fees within 45 days. Said order further provided that failure to do so would result in the sale of the property at a foreclosure sale.

Prentiss Faw. This deed was not prepared by the title company but, rather, by the debtor's attorney, John Cutright. It was executed by Charles Faw on behalf of the debtor corporation and recited payment of nominal consideration of $10.00.

Along with the deed, Charles Faw also prepared and filed an Illinois Real Estate Transfer Declaration. In this declaration, Mr. Faw indicated that he had received full and actual consideration of $157,000.00 for the property. This, however, was not true. Upon learning that the debtor had recorded a deed transferring the property prior to the closing and in contravention of the instructions of the title company, the bank that was going to finance the transaction refused to proceed. As a result, the transfer of the sales funds to the debtor never occurred.

Two days later, on July 27, 2007, the debtor filed its Chapter 11 petition. The debtor's Schedule A, which was filed August 17, 2007, lists the Eastgate property as property of the bankruptcy estate. While Prentiss Faw did eventually execute a deed reconveying the property, this deed was not recorded until September 17, 2007, nearly two months after the bankruptcy petition had been filed.[2]

Coach House filed a Motion for Relief from Stay seeking leave to proceed under its state court foreclosure order. In its motion, the creditor argues, *inter alia*, that because a deed transferring the Eastgate property was recorded prior to the filing of the bankruptcy petition, the real estate does not constitute property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1) and, therefore, is not subject to the provisions of the automatic stay. While the debtor does not dispute that a deed purporting to transfer title to the property was recorded two days prior to the filing of its bankruptcy petition, it contends that there was no consideration for the transaction and, therefore, the deed was invalid. Alternatively, the debtor maintains that even though legal title to the property

---

[2] It appears that the deed from Prentiss Faw was executed on July 31, 2007. However, it was not recorded in the Cole County Recorder's Office until September 17, 2007.

may have been transferred to Prentiss Faw pursuant to the July 25, 2007 deed, the debtor retained "equitable title" to the real estate because the agreed upon purchase price was never paid. This equitable interest, according to the debtor, constitutes "estate property" as defined by § 541 of the Bankruptcy Code and, therefore, the Eastgate property is protected by the automatic stay.

It is well established under Illinois property law that lack of consideration is not sufficient grounds for setting aside or canceling a deed. *Ellsasser v. Miller*, 383 Ill. 243, 252, 49 N.E.2d 21 (1943); *Matanic v. Krajach*, 392 Ill. 547, 64 N.E.2d (1946); *In re Estate of Bontkowski*, 337 Ill. App. 3d 72, 785 N.E.2d 126, 271 Ill. Dec. 475 (1st Dist. 2003). An owner of property may sell that property for very little or for nothing at all if they choose to do so. So long as the conveyance is executed "voluntarily, knowingly, and deliberately, unattended by any circumstances of overreaching, oppression, misrepresentation, fraud or undue influence," the transfer is valid despite an inadequacy or want of consideration. *Matanic,* 64 N.E.2d at 889 (*citations omitted).*

This axiom is illustrated in the case of *Calkins v. Calkins*, 220 Ill. 111, 77 N.E. 102 (1906). In that case, the grantors executed a quit claim deed purporting to transfer a tract of land to their son, Frank Calkins. The deed recited consideration of $1,000.00, along with the grantee's promise that he would stay with and care for the grantors during the remainder of their natural lives. The deed also stated that Frank would be responsible for payment of one-half of a mortgage on the property. The deed was recorded immediately after it was executed. Five years later, Frank Calkins died without having paid the $1,000.00 consideration or any part of the mortgage. His parents, the grantors, then moved to cancel the mortgage and remove the cloud from their title. The master to whom the case had been referred concluded that the deed should be voided because the grantee had not paid the $1,000.00 consideration or the mortgage. The master's report was approved by the circuit court and the executor of the grantee's estate appealed

On appeal, the Illinois Supreme Court reversed the circuit court decree, concluding that the

grantee's failure to pay the consideration was not sufficient cause to invalidate the deed. In so holding, the Court explained:

> The consideration expressed in the deed is $1,000 and future support of the grantors during the remainder of their lives. It is not claimed that there was any fraud practiced on the grantors by the grantee in obtaining the execution of the deed. *Therefore proof of the failure of the grantee to pay the $1,000 [is] not . . . grounds for avoiding or cancelling the deed.*
>
> * * *
>
> It was [also] shown that the mortgage had not been paid. *Failure to pay the mortgage assumed [does] not affect the conveyance of the land.* In case the grantors were compelled to pay the indebtedness, they would have a remedy over against the grantee, and could resort to the land for reimbursement. That, however, would be the extent of the relief to which they would be entitled.

*Id.* at 106 (emphasis added)

Here, as in *Calkins*, it is not alleged, nor is there any evidence suggesting, that the grantor was coerced or fraudulently induced to execute or record the deed. Further, there is no indication in this case that Charles Faw did not understand the nature of the transaction when he executed the deed transferring the property to his father. In fact, Mr. Faw testified that he had agreed to sell the Eastgate property to his father and that he had executed the deed with that intent. The debtor does not maintain that there was any problem with the execution of the deed itself, but, rather that he had only recorded the deed "by mistake." Absent a showing of undue influence or fraud, an otherwise valid deed cannot be cancelled due to lack of consideration. *See White v. White*, 28 Ill. App. 2d 19, 169 N.E.2d 839 (2nd Dist. 1960). Therefore, there is no basis for invalidating the deed between the debtor and Prentiss Faw.

Alternatively, the debtor argues that because the agreed consideration was not paid, the debtor/grantor retained equitable title to the property, even though legal title to the real estate may have been transferred to Prentiss Faw by virtue of the July 25, 2007 deed. Equitable title is defined as a "beneficial interest of one person whom equity regards as the real owner, although legal title

is vested in another." BLACK'S LAW DICTIONARY 1486 (6th ed. 1990). This concept, which creates a dual system of ownership, generally arises in one of two situations-- common law trusts and executory contracts for the sale of real estate. In a trust relationship, the trustee possesses legal title to the property, but is not entitled to the beneficial use and enjoyment of the trust. The equitable ownership interest is held by the trust beneficiary. *IMM Acceptance Corp. v. First Nat'l Bank & Trust Co. of Evanston,*, 148 Ill. App. 3d 949, 499 N.E.2d 1012 (2nd Dist. 1986).

Similarly, where there is an executory contract for the sale of real estate, the purchaser of the property stands as the equitable title holder, with all of the obligations and benefits of ownership, while the seller retains bare legal title, subject to the purchaser's rights. *U.S. v. Big Value Supermarkets, Inc.*, 898 F.2d 493 (6th Cir. 1990). This exchange of interests, also referred to as the doctrine of equitable title, "[treats land] as personalty and personalty as land under certain circumstances." *In re Walston*, 190 B.R. 855, 858 (Bankr. S.D. Ill. 1996), *citing Shay v. Penrose*, 25 Ill.2d 447, 185 N.E.2d 218,219-20 (1962). As the Illinois Supreme Court explained in *Shay*,

> when the owner of land enters into a valid and enforceable contract for its sale[,] he continues to hold the legal title, but in trust for the buyer, and the buyer becomes the equitable owner and holds the purchase money in trust for the seller. The conversion takes place at the time of entering into [the] contract.

*Shay*, 185 N.E.2d at 219-20. *See also Ruwa v. Mente*, 143 Ill.2d 257, 572 N.E.2d 888, 892, 157 Ill. Dec. 424, 428 (1991).

The debtor has submitted no authority in support of its position[3] and the Court has found nothing to suggest that equitable title vested in the debtor/*seller* under the circumstances of this case. Upon execution of the sale contract, equitable title vested in the purchaser, Prentiss Faw. The

---

[3] It should be noted that the debtor provided the Court with absolutely *no* authority in support of its position. Not only did debtor's counsel fail to cite any legal authority in the initial pleadings, he also failed to submit authority after being expressly ordered to do so by the Court. The Court could have completed this Opinion more expeditiously had debtor's counsel provided support for debtor's position.

debtor held only bare legal title to the property, an interest that it subsequently transferred to Mr. Faw pursuant to the July 25, 2007 warranty deed. Therefore, at the time that the bankruptcy was filed on July 27, 2007, the debtor held neither legal nor equitable title to the Eastgate property.

While the debtor retained no ownership interest in the property, the Court's research reveals that at the time of filing, it did possess a "vendor's lien" for the unpaid sales price. Under Illinois property law, a vendor's lien is an equitable interest that is created in favor of a seller of real estate for the unpaid purchase price of the property. "[A] vendor's lien proper[ly] arises in cases where the owner of land conveys the same by deed, thus divesting himself of the legal title, and where some or all of the purchase price remains unpaid. In such case, the grantor retains in equity a lien for the unpaid purchase money." *Robinson v. Appleton*, 124 Ill. 276, 15 N.E. 761, 762 (Ill. 1888). *See also Rinehardt v. Abernathy*, 206 Ill. App. 278, 1917 WL 2472 at *2 (4th Dist. 1917). Such liens are implied and are based on the equitable theory that it would be unconscionable to allow a purchaser of real estate to retain title without paying the purchase price. *Koch v. Roth*, 150 Ill. 212 . However, a vendor's lien is is *not* an interest or estate in realty, but, rather, is merely a remedy for the debt. *Krajcir v. Egidi*, 305 Ill. App. 3d 613, 712 N.E.2d 917, 238 Ill. Dec. 813 (1st Dist. 1999).

In the case at bar, it is undisputed that the debtor transferred the Eastgate property to Prentiss Faw by warranty deed, and, further, that the agreed purchase price was not paid. Therefore, an equitable lien was created in favor of the debtor for the unpaid purchase money. This interest clearly constitutes property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1).[4] However, it is

---

[4] Section 541(a)(1) broadly defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." and includes "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and deriviative. . . . " *In re Carousel Int'l Corp.,* 89 F.3d 359, 362 (7th Cir. 1996). This has been found to specifically include a debtor's lien interest. *In re Cogar,* 210 B.R. 803, 809 (9th Cir. BAP 1997).

imperative to note that while the debtor's *lien* is property of the bankruptcy estate, the actual Eastgate property itself is not. *See Cogar* 210 B.R. at 810; *In re Allen*, 300 B.R. 105, 114 n. 13 (Bankr. D. Col. 2003). It is well established that a bankruptcy estate "cannot succeed to a greater interest in property than the debtor held prior to bankruptcy." *In re NTA, LLC,* 380 F.3d 523, 527 (1st Dist. 2004), *citing* 11 U.S.C. § 541(d). *See also Ga. Pac. Corp. v. Sigma Serv. Corp.,* 712 F.2d 962, 968 (5th Cir.1983) ("[T]he rule is elementary that the estate succeeds only to the title and right in the property that the debtor possessed . . . ." *TTS, Inc. v. Citibank, N.A.* (*In re TTS, Inc.*), 158 B.R. 583, 585 (D. Del.1993) ("Section 541 does not give the debtor any greater rights to property than the debtor had before filing for Chapter 11."). Therefore, as the debtor possessed only an equitable lien for the unpaid purchase price, so, too, does the debtor's bankruptcy estate.

Based on the foregoing, the Court concludes that the Eastgate property was owned solely by Prentiss Faw at the time that the bankruptcy was commenced. It is not property of the estate pursuant to 11 U.S.C. § 541(a)(1),[5] and, consequently, is not subject to the protection of the automatic stay. As such, it was unnecessary for Coach House to seek relief from the stay and the motion is denied as moot .

SEE WRITTEN ORDER ENTERED THIS DATE.

ENTERED: March 5, 2008

                                      /s/ Kenneth J. Meyers
                                  UNITED STATES BANKRUPTCY JUDGE

---

[5] While the Eastgate property falls outside the purview of § 541(a)(1), it appears that it could possibly qualify as estate property pursuant to 11 U.S.C. § 547(a)(7). This section includes as property of the estate certain property interests that the estate acquires after the commencement of the bankruptcy case. However, as the debtor has neither raised this argument, nor presented sufficient evidence in support of such a claim, the Court is not going to address it.